# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | |
|---|---|---|
| BF 3 RIVERS JD SPV, LLC & BIOFERM ENERGY SYSTEMS, LLC, | ) ) ) | **CONSOLIDATED** |
| *Plaintiffs*, | ) ) | Case No. 4:25-cv-29 |
| v. | ) ) | Judge Atchley |
| LYNCHBURG RENEWABLE FUELS, LLC & 3 RIVERS ENERGY PARTNERS, LLC, | ) ) ) ) | Magistrate Judge Dumitru |
| *Defendants*. | ) ) | |

| | | |
|---|---|---|
| LYNCHBURG RENEWABLE FUELS, LLC, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:24-cv-82 |
| v. | ) ) | Judge Atchley |
| BIOFERM ENERGY SYSTEMS, LLC, *et al.*, | ) ) ) | Magistrate Judge Dumitru |
| *Defendants*. | ) ) | |

| | | |
|---|---|---|
| CEI BUILDERS TN, LLC, | ) ) | |
| *Plaintiff*, | ) ) ) | Case No. 4:25-cv-4 |
| v. | ) ) | Judge Atchley |
| BF 3 RIVERS JD SPV, LLC & LYNCHBURG RENEWABLE FUELS, LLC, | ) ) ) ) | Magistrate Judge Dumitru |
| *Defendants*. | ) ) | |

**MEMORANDUM AND ORDER**

Before the Court are the following: the Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 50][1] of Defendant Lynchburg Renewable Fuels, LLC ("LRF") and 3 Rivers Energy Partners, LLC ("3 Rivers, and with LRF "Defendants"); LRF's Renewed and Supplemental Motion to Dismiss BF 3 Rivers JD, SPV, LLC's Claim to Enforce Mechanic's Lien [Doc. 77]; and LRF's Motion to Discharge Liens Upon Posting of Bond [Doc. 78]. For the reasons that follow, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 50] will be **GRANTED IN PART** and **DENIED IN PART**, LRF's Renewed and Supplemental Motion to Dismiss BF 3 Rivers JD, SPV, LLC's Claim to Enforce Mechanic's Lien [Doc. 77] will be **DENIED AS MOOT**, and LRF's Motion to Discharge Liens Upon Posting of Bond [Doc. 78] will be **DENIED**.

I.      BACKGROUND

This consolidated action arises from a failed project to construct an anaerobic digester plant that ultimately ruptured, causing extensive damage. According to the First Amended Complaint, BIOFerm Energy Systems, LLC ("BIOFerm") and LRF entered into an Engineering, Procurement, and Construction Contract (the "Contract") on May 25, 2022, wherein BIOFerm was hired to construct a renewable energy structure (the "Project") for LRF near the Jack Daniel's Distillery in Lynchburg, Tennessee. [Doc. 40 at ¶ 10]. Subsequently, BIOFerm assigned its rights and obligations under the Contract to BF 3 Rivers JD SPV, LLC ("BF 3 Rivers"), while remaining liable for all obligations under the Contract. [*Id.* at ¶¶ 15–18].

Per the parties' Contract, BIOFerm and BF 3 Rivers (collectively, "Plaintiffs") acted as the general contractor, which included the responsibility of overseeing the construction of the Project. [*Id.* at ¶ 19]. During construction, Plaintiffs allege that the Project was substantially delayed due

---

[1] This is a consolidated case involving case nos. 4:24-cv-82, 4:25-cv-4, 4:25-cv-29, and closed case no. 3:24-cv-502. All citations to docket entries in this order are to entries in the lead case, no. 4:25-cv-29, unless otherwise noted.

to various weather issues and problems associated with subcontractors. [*Id.* at ¶¶ 30–35]. On or about September 9, 2024, one of the holding tanks on the property failed, spilling approximately 2.2 million gallons of water. [*Id.* at ¶ 36]. On October 7, 2024, Defendants sent a Notice of Breach to Plaintiffs claiming various breaches under the Contract based on the multiple delays of the Project and the damage caused by the tank rupture, which Plaintiffs dispute. [*Id.* at ¶¶ 39–40]. Because of the parties' disagreements regarding the purported breaches, Defendants sent a Notice of Termination for Cause, terminating the Contract. [*Id.* at ¶ 49]. Plaintiffs allege that it did not breach the Contract and, instead, Defendants failed to pay Plaintiffs according to the terms of the Contract. [*Id.* at ¶ 50]. As a result, Plaintiffs filed a Notice of Lien in the Register of Deeds Office of Moore County, Tennessee on the Project. [*Id.* at ¶ 51].

On June 10, 2025, Plaintiffs filed their First Amended Complaint against Defendants. They assert eight claims and seek, among other things, a declaratory judgment that they did not breach the contract, damages arising under the Contract, damages under the Prompt Pay Act, a declaratory judgment as to the validity of a mechanic's lien, and various equitable remedies. [*Id.* at ¶¶ 52–112]. Defendants filed their Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 50] on June 24, 2025, seeking dismissal of Counts I-VIII pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. [Doc. 50].

II.     STANDRARD OF REVIEW

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56

3

(2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. DEFENDANT'S MOTION TO DISMISS [Doc. 50]

In their Motion to Dismiss, Defendants argue that each of Plaintiffs' claims fail because BIOFerm was an unlicensed contractor when it entered the Contract and, therefore, is precluded from recovering under Tennessee's Contractor's Licensing Act of 1994, Tenn. Code Ann. § 62-6-101. [Doc. 51 at 6–11]. In response, Plaintiffs concede they were not licensed until July 20, 2023, more than a year after entering the contract, but contend that construction on the property did not begin until after the license had been obtained. [Doc. 64 at 10–15]. Plaintiffs argue that Defendants knew Plaintiffs were not licensed when they entered the Contract and actively assisted them in obtaining the license. [*Id.* at 14–15]. Plaintiffs also make various equitable arguments as to why the Court should not dismiss their claims. [*Id.* at 15]. The Court finds Plaintiffs' arguments unpersuasive considering the plain language of Tenn. Code Ann. § 62-6-103.

#### A. Plaintiffs' Licensure Status

Central to the parties' dispute is when Plaintiffs engaged in "contracting," and, therefore, needed to be licensed under Tennessee law. In pertinent part, Tenn. Code Ann. § 62-2-103 provides:

(a)(1) Any person, firm or corporation engaged in contracting in this state shall be

4

required to submit evidence of qualification to engage in contracting, and shall be licensed as provided in this part. It is unlawful for any person, firm, or corporation to engage in or offer to engage in contracting for any project in this state, unless, at the time of such engagement or offer to engage, the person, firm, or corporation has been duly licensed with a monetary limitation sufficient to allow the person, firm, or corporation to engage in or offer to engage in such contracting project under this chapter. . . .

In addition, the statute defines "contracting" as:

> (3) "Contracting" means any person or entity that performs or causes to be performed any of the activities defined in subdivision (4)(A) or (7);
>
> (4)(A)(i) "Contractor" means any person or entity that undertakes to, attempts to or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement or any other construction undertaking for which the total cost is twenty-five thousand dollars ($25,000) or more…. ;
>
> (ii) "Contractor" includes, but is not limited to, a prime contractor, electrical contractor, electrical subcontractor, mechanical contractor, mechanical subcontractor, plumbing contractor and plumbing subcontractor, masonry contractor, and roofing subcontractor where the total cost of the roofing portion of the construction project is twenty-five thousand dollars ($25,000) or more;

T.C.A. § 62-6-102.

Plaintiffs argue they did not violate Tenn. Code Ann. § 62-2-103 because, although they were unlicensed when they entered the Contract, they obtained their license before construction began and before their contractual obligations became due. [Doc. 64 at 11]. This interpretation conflicts with the plain language of the statute and with how Tennessee courts have consistently interpretated it. The statute broadly defines a "contractor" as any person or entity who merely "attempts to or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct or in any manner assume charge of the construction." T.C.A. § 62-6-102(4)(A)(i). Furthermore, the statute makes it unlawful for any entity to "engage in or offer to engage in contracting" unless they are appropriately licensed "at the time of such engagement or offer to engage." T.C.A. § 62-6-102(a)(1). A plain reading

5

of the statute demonstrates that it is not limited to only entities that actually perform construction activities; rather, it broadly includes those who merely offer or contract to engage in such activities. And the Tennessee Supreme Court has been clear that "contracting" encompasses "all phases and aspects of construction—from contract formation through the contract's completion." *Kyle v. Williams*, 98 S.W.3d 661, 665 (Tenn. 2003)." "The statute expressly requires persons engaging in *any* of these activities to be licensed." *Id.* at 666.

Here, the Court finds that once Plaintiffs began the contract formation process with Defendants, Plaintiffs engaged in "contracting" as defined in Tenn. Code Ann. § 62-6-102. Since it is undisputed that Plaintiffs were not licensed at the time they entered the contract with Defendants, they are considered unlicensed for purposes of Tenn. Code Ann. § 62-6-103(b). *See Kyle*, 98 S.W.3d at 666 ("[W]e conclude that the Chancellor correctly held that a contractor is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b) if the contractor does not maintain a valid contractor's license throughout the *entire time* contracting services are performed under the contract." (emphasis added)); *McNatt v. Kanizar*, No. W2015-00870-COA-R3-CV, 2016 Tenn. App. LEXIS 122, at *11–12 (Tenn. Ct. App. Feb. 18, 2016) ("Merely offering to construct the assisted living facility constitutes contracting work . . .. Here, McNatt was not licensed at the time he made his offer to Vestal or any time during the construction project."). Accepting Plaintiffs' argument that they did not need to be licensed until construction activities began would effectively permit unlicensed contractors to negotiate and bid on construction contracts: something the statute plainly prohibits. Therefore, when Plaintiffs actually engaged in construction activities or when their obligations became due is irrelevant.

Because Plaintiffs were not licensed during the entire time contracting services were performed, the Court finds that they acted as unlicensed contractors.

### B. T.C.A § 62-6-103 Limits Plaintiffs' Ability to Recover

Because these issues are currently before the Court at the motion to dismiss stage, the Court

6

Case 4:24-cv-00082-CEA-MJD   Document 141   Filed 11/07/25   Page 6 of 12
PageID #: 1818

must determine whether Plaintiffs, who acted as unlicensed contractors, have asserted a plausible claim for relief. Defendants argue that Plaintiffs have not asserted a valid claim for relief because Tenn. Code Ann. § 62-6-103 bars recovery of anything other than actual and documented expenses. [Doc. 51 at 4]. In response, Plaintiffs offer several equitable considerations as to why they should recover on each of their claims, including the doctrine of unclean hands and that they substantially complied with licensing requirements. [Doc. 64 at 15–18]. The Court finds none of them persuasive.

If an entity is unlicensed for purposes of Tenn. Code Ann. § 62-6-103, its ability to recover is substantially limited. The statute provides:

> (b) Any contractor required to be licensed under this part who is in violation of this part or the rules and regulations promulgated by the board shall not be permitted to recover any damages in any court other than actual documented expenses that can be shown by clear and convincing proof.
>
> (c) Notwithstanding any law to the contrary, no lien otherwise authorized pursuant to title 66, chapter 11 shall be available to any person, firm, or corporation engaged in construction in violation of this chapter.

T.C.A. §§ 62-6-103(b) and (c). Therefore, an unlicensed contractor can only assert a claim to recover actual documented expenses. *See Kyle*, 98 S.W.3d at 665 ("If a person engages in any of these activities without possessing a valid license, then simple logic dictates that the person is an unlicensed contractor for purposes of Tennessee Code Annotated section 62-6-103(b) and is limited in recovery to those documented expenses proven by clear and convincing evidence."). Furthermore, claims based on equitable considerations, such as unjust enrichment and quantum meruit, are not permitted under the statute. *Katmai Support Servs., LLC v. Knoxbi Co.*, LLC, No. 3:15-CV-014-HBG, 2015 U.S. Dist. LEXIS 132650, at *6 (E.D. Tenn Sept. 29, 2015) ("However, Tennessee courts find that recovery outside the statutory bounds based upon equitable considerations is barred.").

Plaintiffs argue that limiting their ability to recover would "lead to a harsh and inequitable result," primarily because they substantially complied with the licensure requirements. [Doc. 64 at

7

16]. In support of their argument, they rely on *Coleman v. Anderson*, 620 S.W. 2d 77 (Tenn. 1985). But as Plaintiffs acknowledge, *Coleman* was decided before the enactment of the statute at issue and is therefore not instructive. Moreover, Plaintiffs' argument asks the Court to ignore the obvious intent of the legislature. The plain language of the statute demonstrates that "the General Assembly intended to permit unlicensed contractors to recover no more than the actual expenses they incurred in performing their work." *Winter v. Smith*, 914 S.W.2d 527, 540 (Tenn. Ct. App. 1995). While the Court recognizes that Plaintiffs may have substantially complied with the licensing requirements, and that Defendants may have been aware of their unlicensed status when the Contract was formed, these considerations do not authorize the Court to depart from the legislature's explicit directive. The Court cannot substitute its own policy preferences for the ones clearly expressed by the Tennessee General Assembly.

As such, Plaintiffs only have a valid claim for relief for actual documented expenses that can be demonstrated by clear and convincing proof. In addition, the statute is clear that a lien is not available to an unlicensed contractor. So, any claims for anything beyond actual documented expenses, including equitable claims or a judgment regarding the validity of a lien, must be dismissed.

However, because the statute does permit Plaintiffs some form of recovery, it would be improper to dismiss Plaintiffs' Amended Complaint [Doc. 40] in its entirety.[2] At the very least, Plaintiffs have alleged facts sufficient to support a claim that they are entitled to actual documented expenses.[3] Defendants argue that Plaintiffs have "not alleged and cannot allege that its actual documented expenses exceed the $26 million that it has already received from the Defendants." [Doc.

---

[2] In its reply brief, even Defendants acknowledge that Plaintiffs' only remedy under the statute is to recover "actual documented expenses that can be shown by clear and convincing proof." [Doc. 71 at 11].

[3] Plaintiffs have properly alleged that there was a contract between the parties [Doc. 40 at ¶10], that Plaintiffs made timely reports of the external costs [*Id*. at ¶¶ 43, 56], and that Defendants failed to pay Plaintiffs at some point [*Id*. at ¶¶ 50, 74–75]. These facts are sufficient to meet the low burden at the motion to dismiss stage.

8

51 at 10]. At this stage, however, the Court must accept the facts alleged by Plaintiffs as true. Whether the evidence ultimately shows that Defendants have already paid Plaintiffs is not an appropriate inquiry on a motion to dismiss. While most of Plaintiffs' allegations relate to their breach of contract claim, the facts are also sufficient to support a claim for actual documented expenses.

The Court finds the conclusions reached in *Katmai Support Servs., LLC v. Knoxbi Co.*, LLC, No. 3:15-CV-014-HBG, 2015 U.S. Dist. LEXIS 132650 (E.D. Tenn Sept. 29, 2015), particularly instructive, as the issues in that case are substantially similar to those presented here. In *Katmai*, the defendants filed a motion for judgment on the pleadings, seeking dismissal of the case or, in the alternative, to limit the plaintiff's recovery to actual documented expenses on the grounds that the plaintiff was an unlicensed contractor. *Id.* at *2–3. Rather than dismissing all of plaintiff's claims, the court struck from the record any allegations relating to its breach of contract claim and replaced them with the allegation that they were entitled to actual documented expenses. *Id.* at *10-11. The court also dismissed all other causes of action, including equitable claims. *Id.*

Similarly, Plaintiffs here have filed eight separate claims for relief, including: (1) declaratory relief that they have not breached the Contract; (2) declaratory relief that Defendants repudiated the Contract; (3) breach of contract; (4) breach of implied duty of good faith and fair dealing; (5) declaratory relief as to the validity of its mechanic's lien; (6) liability under the Tennessee Prompt Pay Act; (7) quantum meruit; and (8) unjust enrichment.

First, Plaintiffs' claims seeking equitable relief must be dismissed. This includes the claims for quantum meruit, unjust enrichment, and any claims for declaratory relief in Counts I, VII, and VIII. *See In re Caudill*, No. 20-3834, 2020 U.S. App. LEXIS 34464, at *2–3 (6th Cir. Oct. 30, 2020) ("Moreover, Caudill's complaint plainly seeks equitable remedies, namely declaratory judgment and injunctive relief."). Second, because Tenn. Code Ann. § 62-6-103(b) bars recovery for "any damages in any court other than actual documented expenses," Plaintiffs' claims for breach of implied duty of

9

Case 4:24-cv-00082-CEA-MJD   Document 141   Filed 11/07/25   Page 9 of 12
PageID #: 1821

good faith and liability under the Tennessee Prompt Pay Act in Counts IV and VI must also be dismissed. Third, because Tenn. Code Ann. § 62-6-103(c) plainly does not permit unlicensed contractors to file for a mechanic's lien, Count V must be dismissed. Finally, as to Plaintiffs' allegations relating to their breach of contract claim in Count III [Doc. 40 at ¶¶ 71–77], the Court will treat it as one for actual documented expenses. The Court will therefore strike the damages allegations contained in Plaintiffs' Prayer for Relief [Doc. 40 at 19–20, ¶¶ 1, 2, 3, 4, 5] and replace them with the allegation that Plaintiffs are entitled to actual and documented expenses, after giving credit for all payments made by Defendant.

Accordingly, Defendants' Motion to Dismiss [Doc. 50] will be **GRANTED IN PART** and **DENIED IN PART**.

IV. **LRF's RENEWED AND SUPPLEMENTAL MOTION TO DISMISS [Doc. 77]**

LRF has also filed a Renewed and Supplemental Motion to Dismiss [Doc. 77], advancing many of the same arguments in its original Motion to Dismiss [Doc. 50]. LRF's Renewed Motion does not affect the Court's holding as to Plaintiffs' claims. As such, LRF's Renewed and Supplemental Motion to Dismiss [Doc. 77] will be **DENIED AS MOOT**.

V. **LRF's MOTION TO DISCHARGE LIENS UPON POSTING OF BOND [Doc. 78]**

LRF has filed a procedurally unusual motion: a Motion to Discharge Liens Upon Posting of Bond [Doc. 78], asking the Court to make certain findings regarding liens that have been placed on its property. LRF represents it has been working diligently to repair the damage to the Project after the tank explosion, but it is currently being hindered by what it believes are invalid liens. [Doc. 78 at 2–4]. While the Court understands LRF's plight, it has not filed a procedurally proper motion to obtain the type of relief it seeks.

LRF asks the Court to determine, among other things, whether posting a bond in a specified amount would discharge the liens and whether certain liens on its property are invalid. [*Id.* at 6–7]. In

10

Case 4:24-cv-00082-CEA-MJD   Document 141   Filed 11/07/25   Page 10 of 12
PageID #: 1822

substance, LRF seeks a declaration of its rights and obligations concerning the liens on its property: essentially a request for declaratory relief. *See Poole v. Fannie Mae*, 768 Fed. Appx. 332, 338 (6th Cir. 2019) ("A declaratory judgment action allows a court to declare '[t]he existence or non-existence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend.'" (internal citations omitted)); *Markos v. Karvounis*, No. 5:21-CV-00026-TBR-LLK, 2021 U.S. Dist. LEXIS 138599, at *6–8 (W.D. Ken. July 23, 2021) (finding that two motions requesting to record a deed and transfer partnership assets were seeking declaratory relief and therefore not proper as a motion).

In order to obtain declaratory relief, a party must file a complaint or assert a counterclaim. *Id.* "[A] party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment." *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (quoting *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y.1995)). "[T]his Court 'may declare the rights and other legal relations of any interested party seeking such declaration' pursuant to 28 U.S.C. § 2201 only 'upon the filing of an appropriate pleading.'" *In re ClassicStar Mare Lease Litig.*, No. 07-353-JMH, 2016 U.S. Dist. LEXIS 26794, 2016 WL 817139, at *1 (E.D. Ky. Feb. 29, 2016) (citing 28 U.S.C. § 2201; Fed. R. Civ. P. 7). Here, LRF has not filed a complaint, nor has it filed an answer asserting a counterclaim for declaratory relief. As such, LRF is asking the Court to rule on claims that are not properly before it, and it would be inappropriate for the Court to grant LRF the relief requested.

Accordingly, LRF's Motion to Discharge Liens Upon Posting of Bond [Doc. 78] is **DENIED**.

## VI. CONCLUSION

For the reasons set forth above, LRF's Renewed and Supplemental Motion to Dismiss BF 3 Rivers JD, SPV, LLC's Claim to Enforce Mechanic's Lien [Doc. 77] is **DENIED AS MOOT**, and LRF's Motion to Discharge Liens Upon Posting of Bond [Doc. 78] is **DENIED**. Defendants' Motion

11

to Dismiss Plaintiffs' First Amended Complaint [Doc. 50] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiffs' claim for declaratory relief in Count I is **DISMISSED**.

2. Plaintiffs' claim that Defendants repudiated the Contract in Count II is **DISMISSED**.

3. Plaintiffs' allegations relating to their breach of contract claim in Count III are **STRICKEN** from the record and replaced with the allegation the Plaintiffs are entitled to actual documented expenses, after giving credit for all payments made by Defendants.

4. Plaintiffs' claim for breach of implied duty of good faith and fair dealing in Count IV is **DISMISSED**.

5. Plaintiffs' claim seeking a judgment as to the validity of its mechanic's lien in Count V is **DISMISSED**.

6. Plaintiffs' claim under the Tennessee Prompt Pay Act and Non-Payment Claims in Count VI is **DISMISSED**.

7. Plaintiffs' claim for quantum meruit in Count VII is **DISMISSED**.

8. Plaintiffs' claim for unjust enrichment in Count VIII is **DISMISSED**.

9. The damages allegations contained in Plaintiffs' Prayer for Relief [Doc. 40 at 19–20, ¶¶ 1, 2, 3, 4, 5] are **STRICKEN** and replaced with the allegation that Plaintiffs are entitled to actual and documented expenses, after giving credit for all payments made by Defendant.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**